**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MINNA BARTON**, on behalf of herself individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CENTURY SUPPORT SERVICES, LLC**,<br><br>Defendant. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Minna Barton ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant Century Support Services, LLC, ("Century" or "Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This Class Action arises from a cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendant (the "Data Breach").

2. The Data Breach resulted in the unauthorized disclosure, exfiltration, and theft of Century's current and former employees' and clients' highly personal information, including full names, dates of birth, Social Security numbers, driver's license and/or state identification numbers, passport numbers, financial account information, digital signatures ("personal identifying information" or "PII") medical information, and health insurance information ("protected health information" or "PHI"). Plaintiff refers to PII and PHI collectively as "Private Information."

3. On information and belief, the Data Breach occurred from on or around September 10, 2024 to on or around November 7, 2024, a staggering 58 days where cybercriminals were permitted unfettered access to Plaintiff's and the Class's most Sensitive Private Information.

4. On June 27, 2025, Century finally provided notice to state Attorneys General about the widespread Data Breach. A sample notice Defendant sent to the California Attorney General's Office is attached as **Exhibit A** (referred to herein as the "Breach Notice"). Notice is ongoing, and many victims including Plaintiff have never received individual notice.

5. Century waited *234 days* before notifying Plaintiff and Class Members about the Data Breach, even though Plaintiff and thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

6. Century's Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell its current and former employees and clients how many people were impacted, how the breach happened, or why it took Century over seven months to begin notifying victims that hackers had gained access to highly sensitive Private Information.

7. Defendant's failure to timely detect and report the Data Breach made its current and former employees and clients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

8. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of misuse of victim's Private Information.

9. In failing to adequately protect Plaintiff's and the Class's Private Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed tens of thousands of its current and former employees and clients.

10. Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Private Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

11. Plaintiff is a former employee of Defendant and a Data Breach victim.

12. Accordingly, Plaintiff, on her own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

13. Plaintiff, Minna Barton, is a natural person and citizen of Pennsylvania, where she intends to remain.

14. Defendant, Century Support Services, LLC, is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 2000 Commerce Loop, Suite 2111, North Huntingdon, PA 15642.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of

$5,000,000, exclusive of interest and costs and there are more than 100 members in the proposed class.

16. Many states, including Maine, Vermont, and California, have statutes requiring companies to report data breaches to the relevant state's attorney general's office. *See* Cal. Civ. Code, § 1798.82, subd. (a); M.R.S. § 1348; 9 V.S.A. § 2435.

17. Pursuant to Cal. Civ. Code, § 1798.82, subd. (a), Century submitted a letter and other information about the Data Breach to the California Attorney General's Office, which is publicly available.[1]

18. Pursuant to M.R.S. § 1348, Century submitted a letter and other information about the Data Breach to the Maine Attorney General's Office, which is publicly available.[2] Century reported that it had experienced hacking and that Data Breach affected 160,759 individuals, including 56 Maine residents.[3]

19. Pursuant to 9 V.S.A. § 2435, Defendant submitted a letter the Office of the Vermont Attorney General, which is publicly available.[4]

20. Because Plaintiff is a citizen of Pennsylvania and Defendant has publicly reported the existence of members of the proposed class in California, Maine and Vermont, Plaintiff has satisfied the minimal jurisdictional requirements set forth in 28 U.S.C. § 1332(d)(2) in that there are many members of the putative class who are citizens of states different from Defendant.

---

[1] *Submitted Breach Notification Sample,* STATE OF CALIFORNIA DEPARTMENT OF JUSTICE, https://oag.ca.gov/ecrime/databreach/reports/sb24-605455 (last visited July 21, 2025).

[2] *Data Breach Notification*, OFFICE OF THE MAINE ATTORNEY GENERAL, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/a59ab7f7-0aff-43e0-b1db-53d8ad91cfaf.html (last visited July 21, 2025).

[3] *Id.*

[4] *2025-07-15 Next Level Finance Partners dba Century Support Services Data Breach Notice to Consumers*, OFFICE OF THE VERMONT ATTORNEY GENERAL, https://ago.vermont.gov/document/2025-07-15-next-level-finance-partners-dba-century-support-services-data-breach-notice-consumers (last visited July 21, 2025).

21. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and does substantial business in this District.

22. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

***Century Support Services, LLC***

23. Century states it is "one of the nation's largest companies providing debt settlement services to consumers having trouble with their unsecured debts."[5] According to Century, its "mission is to help each and every one of our clients resolve their debt in the shortest time possible and to perform in a way that we are extraordinarily responsive, innovative and professional."[6]

24. Century also claims that its "3-Step program has worked for over 255,000 people and counting."[7] Century boasts a total annual revenue of over $49.5 million.[8]

25. As part of its business, Century must oversee, manage, and protect the Private Information of its current and former employees and clients.

26. As a self-proclaimed leader in its industry handling highly sensitive aspects of its clients' financial affairs, Century understood the need to protect its employees and client's data and prioritize its data security.

27. Indeed, Defendant states in its Privacy Policy that:

---

[5] *Century Support Services*, LINKEDIN, https://www.linkedin.com/company/century-support-services-llc/ (last visited July 21, 2025).
[6] *Id.*
[7] *How it Works*, CENTURY, https://www.centuryss.com/how-it-works/ (last visited July 21, 2025).
[8] *Century Support Services*, ZOOMINFO, https://www.zoominfo.com/c/century-support-services-llc/371534682 (last visited July 21, 2025).

a. "Century Support Services, LLC (CSS) respects the right to privacy of all our applicants, current and former customers, and is committed to providing the highest level of security concerning the collection, use, and sharing of your personal information"

b. "[Century] wants you to know how [Century] will ensure our ongoing responsibility to safeguard the confidentiality of your personal non-public information. We want you to have the information you need to make an informed decision about sharing your information with us;"

c. "[Century] maintains physical, electronic and procedural safeguards for your non-public personal information against unauthorized access or use. Within [Century] your non-public personal information is restricted to employees who have a legitimate business need to access it including those who service your account or provide other services to you. [Century] employees are educated about the importance of maintaining the security of your personal information, and are subject to a corporate code of ethics and policies that require it to be secure."[9]

28. Despite recognizing its duty to do so, on information and belief, Century has not implemented reasonably cybersecurity safeguards or policies to protect its current and former employees' and clients' Private Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Century leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to its current and former employees' and clients' Private Information.

[9] *Privacy Policy*, CENTURY, https://www.centuryss.com/privacy-policy/ (last visited July 21, 2025).

***The Data Breach***

29. Plaintiff was an employee of Century from 2017 to 2021. In collecting and maintaining Plaintiff's and the Class's Private Information, Defendant implicitly agreed that it will safeguard the data using reasonable means according to its internal policies, as well as state and federal law.

30. On information and belief, Defendant collects and maintains its current and former clients' and employees' Private Information in its computer systems.

31. According to the Breach Notice, on "November 7, 2024, an unauthorized party gained access to [Century's] computer systems."[10] However, Defendant reported to the California Attorney General's Office that the breach dates were September 10, 2024 and November 7, 2024.[11] Defendant also reported to the Maine Attorney General's office that the Data Breach occurred on September 10, 2025.[12] Thus, on information and belief, the Data Breach took place over multiple weeks.

32. Defendant also states in its Breach Notice that upon discovering the unauthorized activity, it "contained the incident and commenced an immediate and thorough investigation."[13]

33. The investigation, which Century states concluded on May 30, 2025, revealed that "one or more of the files potentially accessed or acquired by the unauthorized party contained personal information. The information may include one or more of the following categories: full name, date of birth, Social Security Number, driver's license and/or state identification number,

---

[10] Ex. A.
[11] N. 1.
[12] N. 2.
[13] Ex. A.

medical information, health insurance information, passport number, financial account information, and digital signature."[14]

34. In other words, Century's investigation revealed that its network had been hacked by cybercriminals for an appalling *58 days* before discovery and that Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its current and former employees' and clients' highly sensitive Private Information.

35. Defendant reported to the Maine Attorney General's office that the Data Breach affected 160,759 individuals.

36. Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's Private Information for theft and sale on the dark web.

37. On or around June 27, 2025, over a month after Century states its investigation concluded and over eight months after the Data Breach first began, Century finally notified state Attorney Generals that the Data Breach occurred. However, notice is ongoing, and Plaintiff has never received individual notice from Defendant about the Data Breach.

38. Despite its duties and alleged commitments to safeguard Private Information, Defendant did not in fact follow industry standard practices in securing the Private Information in its care, as evidenced by the Data Breach.

39. In response to the Data Breach, Defendant contends that it "continually evaluates and modifies its practices to enhance the security and privacy of the personal information

---

[14] *Id.*

[Century] maintains."[15] Though Defendant fails to expand on what these enhancements are, such enhancements should have been in place before the Data Breach.

40. Through its Breach Notice, Defendant recognized its duty to implement reasonable cybersecurity safeguards or policies to protect the Private Information in its care, insisting that, despite the Data Breach demonstrating otherwise, it "is committed to maintaining the privacy of personal information in its possession and has taken many precautions to safeguard it"[16]

41. Also through its Breach Notice, Defendant recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "remain vigilant in reviewing your financial account statements and credit reports for irregular activity over the next twelve to twenty-four months."[17]

42. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Private Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

43. On information and belief, Century has offered several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Private Information that cannot be changed, such as Social Security numbers.

---

[15] *Id.*
[16] *Id.*
[17] *Id.*

44. Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Private Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

45. Because of the Data Breach, Defendant inflicted injuries upon Plaintiff and Class Members. And yet, Defendant has done absolutely nothing to provide Plaintiff and the Class Members with relief for the damages they suffered and will suffer.

46. On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its current and former employees' and clients' Private Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information.

47. Furthermore, Defendant intentionally obfuscates the nature of the breach, failing to clearly inform individual breach victims that the Data Breach occurred, and refusing to inform state Attorneys General when exactly Defendant discovered the breach, how it happened, who perpetrated the breach, whether a ransom was demanded or paid, exactly when it discovered the breach, whether it was able to secure its systems during or after the breach, or why it took the Defendant approximately eight months before it finally beginning to acknowledge that existence of the Data Breach.

48. Additionally, Defendant confusingly claims "an unauthorized party gained access to our computer systems," and, at the same time, that such unauthorized party "*potentially accessed or acquired*" files containing Private Information.[18]

---

[18] *Id.*

49. This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts.

50. Despite Defendant's intentional opacity about the root cause of the Data Breach and its impact, several facts can be gleaned from the notice including that: (1) this data breach was the work of cybercriminals; (2) cybercriminals successfully infiltrated Century's network environment; and (3) once inside, cybercriminals targeted highly private information for download and theft.

51. In the context of data breach notice letters of this type, Defendant's use of the phrase "potentially accessed or acquired" is misleading. Companies only send notice letters because data breach notification laws require them to do so, and notice letters are only sent to those persons who Defendant itself reasonably believes had Private Information actually acquired by an unauthorized individual.

52. On information and belief, even if Defendant paid a ransom demand to a cybercriminal group, this would not ensure the security of Plaintiff's and the Class's Private Information. While ransomware groups usually remove stolen data from their data leak sites when a ransom is paid, there is no guarantee that the data will be deleted.[19] That data is valuable and can easily be sold to another threat actor, so there is little incentive to delete it.[20]

53. Therefore, upon information and belief, Century's Breach Notice is intentionally misleading, and intentionally downplays the severity of the Data Breach and the threat it poses to tens of thousands of individuals.

---

[19] Steve Adler, *Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack*, THE HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomware-victims-that-pay-a-ransom-suffer-a-second-attack/.
[20] *Id*.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice***

54. It is well known that Private Information, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

55. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

56. Indeed, in 2024, a 3,158 data breaches occurred, exposing approximately 1,350,835,988 sensitive records—a 211% increase year-over-year.[21]

57. Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[22]

58. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone handling large amounts of consumer data, including Defendant.

59. Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII and PHI private and secure, Defendant failed to take

---

[21] *2024 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER, https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last visited March 24, 2025).

[22] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited March 24, 2025).

appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

60. This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included extortion and threatening to release stolen data.

***Plaintiff's Experience***

61. Plaintiff was an employee of Century from on or around 2017 to on or around 2021.

62. By failing to provide Plaintiff with individual notice of the Data Breach, Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects.

63. As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's Private Information for theft by numerous cybercriminals and sale on the dark web.

64. Plaintiff does not recall ever learning that her Private Information was compromised in a data breach incident, other than the breach at issue in this case.

65. In the aftermath of the Data Breach, Plaintiff has experienced identity theft and fraud attempts. Plaintiff observed discrepancies on her Experian credit report including aliases and former addresses she does not recognize. For example, an unknown individual using Plaintiff's name is associated with a  Mississippi address listed, and Plaintiff has never resided in or been to Mississippi.

66. As a result of the identity theft and fraud attempts outlined above, Plaintiff has spent time dealing with the consequences of the Data Breach, which includes time spent self-monitoring

her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

67. Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

68. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

69. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

70. Plaintiff suffered actual injury from the exposure and theft of her Private Information—which violates her rights to privacy.

71. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

72. Indeed, shortly after the Data Breach, Plaintiff began suffering a significant increase in spam texts and calls. These spam communications suggest that Plaintiff's Private Information is being disseminated by cybercriminals on the dark web.

73. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Data Breach, cybercriminals are able to use

the stolen and compromised to gather and steal even more information.[23] On information and belief, Plaintiff's phone number was compromised as a result of the Data Breach.

74. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Class Suffered Common Injuries and Damages Due to Defendant's Conduct***

75. Plaintiff and members of the proposed Class have suffered injury from the misuse of their Private Information that can be directly traced to Defendant.

76. As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

a. Identity theft and fraud;

b. The loss of the opportunity to control how their Private Information is used;

c. The diminution in value of their Private Information;

d. The compromise and continuing publication of their Private Information;

e. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

f. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent

---

[23] Ryan Toohil, *What do Hackers do with Stolen Information*, AURA (Sept. 5, 2023), https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

researching how to prevent, detect, contest, and recover from identity theft and fraud;

g. Delay in receipt of tax refund monies;

h. Unauthorized use of stolen Private Information; and

i. The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Private Information in its possession.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

77. Plaintiff and members of the proposed Class have suffered injury from the misuse of their Private Information that can be directly traced to Defendant.

78. As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Private Information is used;

b. The diminution in value of their Private Information;

c. The compromise and continuing publication of their Private Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent

researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Private Information; and

h. The continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Private Information in its possession.

79. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up to $1,000.00 depending on the type of information obtained.

80. The value of Plaintiff's and the Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years, and criminals frequently post stolen Private Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

81. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

82. One such example of criminals using Private Information for profit is the development of "Fullz" packages.

83. Cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

84. The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

85. Defendant disclosed the Private Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Private Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

86. Defendant's failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

87. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous

guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

88. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the sensitive consumer information that it keeps;

b. properly dispose of Private Information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

89. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

90. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

91. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

92. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' and clients' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Fails to Comply with Industry Standards***

93. As noted above, experts studying cyber security routinely identify entities in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

94. Several best practices have been identified that a minimum should be implemented by employers in possession of Private Information, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

95. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

96. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01,

PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

97. These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for its employees. Upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

98. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Private Information was compromised in the Data Breach including all those who received notice of the breach.

99. Excluded from the Class is Defendant, their agents, affiliates, parents, subsidiaries, any entity in which Defendant have a controlling interest, any of Defendant's officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

100. Plaintiff reserves the right to amend the class definition.

101. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

a. **Numerosity**. Plaintiff is representative of the Class, which, upon information abd belief, consists of 160,759 members, far too many to join in a single action;

b. **Ascertainability**. Members of the Class are readily identifiable from information in Defendant's possession, custody, and control;

c. **Typicality**. Plaintiff's claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's interests. Her interests do not conflict with the Class's interests, and she has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

e. **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

   i. Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

   ii. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

   iii. Whether Defendant were negligent in maintaining, protecting, and securing Private Information;

   iv. Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's Private Information;

   v. Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

   vi. Whether Defendant's Breach Notice was reasonable;

   vii. Whether the Data Breach caused Plaintiff's and the Class's injuries;

viii. What the proper damages measure is; and

ix. Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

102. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

103. Plaintiff realleges all previous paragraphs as if fully set forth below.

104. Plaintiff and members of the Class entrusted their Private Information to Defendant. Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the Private Information in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

105. Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their Private Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Private Information —just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and the Class's Private Information by disclosing and providing access to this information to unauthorized third parties and by failing to properly supervise both the way the

Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

106. Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their Private Information. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

107. Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's Private Information.

108. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information —whether by malware or otherwise.

109. Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and the Class and the importance of exercising reasonable care in handling it.

110. Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the Private Information of Plaintiff and the Class which actually and proximately caused the Data Breach and

Plaintiff's and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

111. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

112. Plaintiff realleges all previous paragraphs as if fully set forth below.

113. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Private Information.

114. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as

Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' and clients' Private Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's Private Information.

115. Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

116. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

117. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

118. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

119. But for Defendant's wrongful and negligent breach of the duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

120. The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Private Information.

121. Had Plaintiff and the Class known that Defendant did not adequately protect their Private Information, Plaintiff and members of the Class would not have entrusted Defendant with their Private Information.

122. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence per se.

123. As a direct and proximate result of Defendant's negligence per se, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of Private Information; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen Private Information, entitling them to damages in an amount to be proven at trial.

124. Additionally, as a direct and proximate result of Defendant's negligence per se, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information in its continued possession.

**COUNT III**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

125. Plaintiff realleges all previous paragraphs as if fully set forth below.

126. Defendant entered into various contracts with its clients and employees to provide debt relief services to its clients and to provide employment to its employees.

127. As a condition of doing business with or being an employee of Defendant Plaintiff and members of the Class provided Defendant with their Private Information.

128. In turn, Defendant agreed it would not disclose the Private Information it collects to unauthorized persons. Defendant also promised to safeguard its clients' and employee' Private Information

129. Plaintiff and the members of the Class accepted Defendant's offer by providing Private Information to Defendant in exchange for employment with or being a client of Defendant.

130. Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their Private Information.

131. Plaintiff and the members of the Class would not have entrusted their Private Information to Defendant in the absence of such an agreement with Defendant.

132. Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiff and members of the Class by:

a. Failing to properly safeguard and protect Plaintiff's and members of the Class's Private Information;

b. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c. Failing to ensure the confidentiality and integrity of electronic Private Information that Defendant created, received, maintained, and transmitted.

133. The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

134. Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

135. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

136. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

137. Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

138. In these and other ways, Defendant violated its duty of good faith and fair dealing.

139. Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith

and fair dealing.

140. Plaintiff, on behalf of himself and the Class, seek compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

141. Plaintiff realleges all previous paragraphs as if fully set forth below.

142. Plaintiff and members of the Class conferred a benefit upon Defendant in providing Private Information to Defendant.

143. Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Class. Defendant also benefited from the receipt of Plaintiff's and the Class's Private Information, as this was used to facilitate its services to or employment of Plaintiff and the Class.

144. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

145. Instead of providing a reasonable level of security, or retention policies, which would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

146. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the Class's Private Information because Defendant failed to adequately protect their Private Information.

147. Plaintiffs and Class Members have no adequate remedy at law.

148. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

**COUNT V**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

149. Plaintiff realleges all previous paragraphs as if fully set forth below.

150. Given the relationship between Defendant and Plaintiff and Class Members, where Defendant became guardian of Plaintiff's and Class Members' Private Information, Defendant became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' Private Information; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

151. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendant's relationship with them—especially to secure their Private Information.

152. Because of the highly sensitive nature of the Private Information, Plaintiff and Class Members would not have entrusted Defendant, or anyone in Defendant's position, to retain their Private Information had they known the reality of Defendant's inadequate data security practices.

153. Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class Members' Private Information.

154. Defendant also breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

155. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed supra).

**PRAYER FOR RELIEF**

Plaintiff and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Private Information;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

Dated: July 22, 2025

Respectfully submitted,

By: */s/ Larry Bendesky*

Larry Bendesky (PA Atty ID #51026)
Patrick Howard* (PA Atty ID #88572)
**SALTZ, MONGELUZZI, & BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: (215) 496-8282
Fax: (215) 496-0999
lbendesky@smbb.com
phoward@smbb.com

Raina Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
(872) 263-1109 (facsimile)
raina@straussborrelli.com

**Pro Hac Vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*